UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY HICKMAN,

     Plaintiff,                            Case No. 18-cv-14057
                                            Hon. Matthew F. Leitman

v.

CITY OF WESTLAND, *et al.*,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 44)

In this action, Plaintiff Jerry Hickman brings claims under 42 U.S.C. § 1983 and under Michigan law against the City of Westland (the "City") and several Westland police officers. (*See* Compl., ECF No. 1.)  The Defendants have filed a motion for summary judgment on all of Hickman's claims. (*See* Mot., ECF No. 44.)  As explained below, the Defendants are not entitled to summary judgment with respect to most of Hickman's claims because there are conflicts between Hickman's testimony and Defendants' testimony, and the audio and video recordings of the events at issue do not so undermine Hickman's testimony as to render it unbelievable as a matter of law.  Accordingly, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

1

# I

## A

On the early morning of December 28, 2017, Westland police officers Compton and Strohauer stopped Hickman as he was driving a vehicle through the City. (*See* Dashcam Recording at 2:42:23, ECF No. 44-2.) Hickman told the officers that there was an outstanding warrant for his arrest. The officers asked him to step out of his vehicle and conducted a pat down search. (*See id.* at 2:42:58-2:43:32.) During that search, Compton perceived Hickman to be clenching his buttocks in order to conceal something hidden in his crotch or in his buttocks. (*See id*. at 2:43:53-2:44:43.) Compton instructed Hickman to stop clenching his buttocks, and Compton believed that Hickman disobeyed that command. (*See id.* at 2:44:01.)

Compton concluded that Hickman's non-compliance prevented the officers from determining whether Hickman was hiding something in his crotch or buttocks. (*See id*.) Compton and Strohauer therefore arrested Hickman and took him to the Westland police station so that they could conduct a strip search in order to determine whether he had contraband hidden in his crotch or buttocks. (*See id.* at 2:45:30-2:45:35.)

When Compton and Strohauer arrived at the police station, they sought and obtained permission from Lieutenant Novakowski to conduct a strip search of Hickman. (*See* Novakowski Dep. at 9-11, ECF No. 44-5, PageID.584; *see also*

Hickman Strip Search Form, ECF No. 44-7.)  They took Hickman into a small room adjacent to the larger booking area known as the "holding cell." (Novakowski Dep. at 14, ECF No. 44-5, PageID.585.)  They were joined there by Novakowski and officers Gomez and Monson. (*See id.*)  The five officers then attempted to conduct a strip search of Hickman. (*See* Compton Dep. at 26, ECF No. 44-8, PageID.614.) Their interaction with Hickman in the holding lasted a total of roughly 13-minutes. (*See* Booking Room Video 1, ECF No. 44-10.)

Hickman and the officers offer differing versions of what occurred in the holding cell.  According to Hickman, he was handcuffed the entire time that the officers attempted to search him, he largely cooperated with the officers, and he attempted to follow most of their commands. (*See, e.g.,* Hickman Dep. at 61, 63, 133, 138, ECF No. 44-3, PageID.545, 563-564.)  Hickman acknowledges that at some points during the interaction, he told the officers that he would not comply with some of their commands and/or did not immediately comply. (*See id.* at 64-65, 71, PageID.545-547.)  But he says that he did so because the officers were directing him to do things that he had just done. (*See id.* at 140-142, PageID.564-565.)  And he says that he did comply with the commands in question shortly after his initial refusal do so. (*See id.*)  Hickman also explains that at some point during his interaction with the officers, he "squiggled" as they applied force to him.  He says

that he did not "squiggle" in an effort to resist the search, but, instead, because the force being applied was causing him pain. (*Id*. at 67-68, 127, PageID.546, 561.)

Hickman insists that even though he did not meaningfully resist the efforts to conduct the strip search, the officers repeatedly and forcefully pushed his arms up while his hands were cuffed behind his back in an effort to force him to bend over. (*See, e.g., id.* at 61, 65, 133, PageID.545-546, 563.)  He says that he suffered pain as the officers forced his cuffed hands and arms upward. (*See id.*)   Hickman also contends that an officer placed a knee on his neck and that an officer (or officers) placed a knee on his arms.  (*See id.* at 126-128, PageID.561.)  He says that the knees were applied with such force that it caused bruising on his arms. (*See id.* at 89, 127, 150, PageID.552, 561, 567.) Hickman further contends that after his pants and underwear had been removed, officers forcefully shoved him onto a bench and caused his exposed testicles to contact the bench. (*See id.* at 126, PageID.561.) Finally, Hickman says that while he was restrained, Officer Compton twice inserted a finger into his rectum. (*See id.* at 130, 144, PageID.562, 566.)

The officers tell a different story.  They say that Hickman refused to comply with most of their commands to submit to the strip search and that he resisted their efforts to complete the search. (*See* Compton Dep. at 35-36, 43, ECF No. 44-8, PageID.616, 618; Gomez Dep. at 21-22, ECF No. 44-11, PageID.651; Monson Dep. at 21, ECF No. 44-12, PageID.663.)   They do acknowledge, however, that during

at least some portions of the search, Hickman did follow a number of their commands and place his body in the positions they requested. (*See, e.g.,* Monson Dep. at 20, ECF No. 44-12, PageID.662, Strohauer Dep. at 26, ECF No. 44-4, PageID.577, Gomez Dep. at 28-29, ECF No. 44-11, PageID.652-653, Monson Dep. at 19, ECF No. 44-12, PageID.662.)  The officers also say that despite Hickman's alleged resistance during much of the encounter, they did not use physical force against him.  Indeed, the sole physical contact that the officers remember having with Hickman was merely "holding" his arms. (*See, e.g.,* Gomez Dep. at 24, ECF No. 44-11, PageID.651, Compton Dep. at 34, ECF No. 44-8, PageID.616.)  They either deny or have no recollection of forcing Hickman to bend over, slamming Hickman onto the bench, and/or placing a knee on Hickman's neck or arms. (*See e.g.,* Strohauer Dep. at 25, ECF No. 44-4, PageID.577, Novakowski Dep. at 17, ECF No. 44-5, PageID.586, Gomez Dep. at 23-24, ECF No. 44-11, PageID.651, Monson Dep. at 20, ECF No. 44-12, PageID.662.)  And Compton denies that he ever inserted a finger into Hickman's rectum. (*See* Compton Dep. at 39, ECF No. 44-8, PageID.617.)  Most of the officers also contend that Hickman was not handcuffed while they were trying to conduct the strip search in the holding cell. (*See* Compton Dep. at 33, ECF No. 44-8, PageID.616; Strohauer Dep. at 22-23, ECF No. 44-4, PageID.576; but *see* Gomez Dep. at 21, ECF No. 44-11, PageID.651.)

Some portions of the interaction between Hickman and the officers at the police station were captured on a video and audio recording. (*See* Booking Room Video 1, ECF No. 44-10; *see also* Booking Room Video 2, ECF No. 44-13.)  There was a camera in the booking room (into which Hickman was originally taken), but the camera did not face directly into the holding cell in which the officers attempted to conduct the strip search.  The video recording made by the camera reflects only those portions of the attempted strip search that occurred near the door of the holding cell.  Most of the interactions between Hickman and the officers in the holding cell were therefore not captured on video.

Even though the camera did not record video images of the entire encounter, it did record audio of much of the encounter.  The audio recording reflects much of what was said between Hickman and the officers, but portions of it are muffled and not perfectly clear.   Some parts of the audio – especially the first couple minutes – contain statements by Hickman questioning the need for the search and complaining loudly about the search.  Thus, at least some portions of the audio appear consistent with the officers' account that Hickman was, to some degree, declining to cooperate with their effort to search him.  But the audio recording lasts for thirteen minutes, and Hickman's alleged resistance to the search becomes less clear as the recording progresses.  In fact, at some points, the recording appears to reflect Hickman's effort to cooperate with the search.

6

The bottom line with respect to the video and audio recordings is this: they provide some helpful information about what was said in the holding cell and about what happened in that room, but they fall short of providing a full and clear picture of what transpired during the attempted strip search.

## B

On December 26, 2018, Hickman filed this action against Novakowski, Compton, Strohauer, Gomez, and Monson (collectively, the "Officer Defendants") and the City. (*See* Compl., ECF No. 1.) Hickman's Complaint asserts the following claims:

- Count I – Use of excessive force in violation of the Fourth Amendment against all of the Officer Defendants under 42 U.S.C. § 1983.

- Count II – Failure to intervene to prevent and/or protect against the use of excessive force against all of the Officer Defendants under 42 U.S.C. § 1983.

- Count III – Unreasonable search and seizure in violation of the Fourth Amendment against all of the Officer Defendants under 42 U.S.C. § 1983.

- Count IV – Conspiracy to violate constitutional rights against all of the Officer Defendants under 42 U.S.C. § 1983.

- Count V – Assault and battery against all of the Officer Defendants under Michigan law.

- Count VI – Intentional infliction of emotional distress against all of the Officer Defendants under Michigan law.

- Count VII – Municipal liability against the City and supervisory liability against Novakowski under 42 U.S.C. § 1983.

**C**

On August 10, 2020, the Defendants filed a motion for summary judgment on all of the claims brought in Hickman's Complaint. (*See* Mot., ECF No. 44.)  The Court held a video hearing on the motion on March 16, 2021.

During the hearing, counsel for Hickman clarified that: (1) the unreasonable search and seizure claim in Count III of the Complaint is based solely upon Officer Compton's alleged insertion of his finger into Hickman's rectal cavity without a warrant, and (2) Hickman had agreed to voluntarily dismiss the conspiracy claim in Count IV of the Complaint.

**II**

**A**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

## B

"Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "This immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"A plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Jacobs*, 915 F.3d at 1039. "To do so, a plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 735). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury

9

and drawing all reasonable inferences in that party's favor." *Brown*, 814 F.3d at 457 (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). The Court may answer these questions in any order, but "if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Id.*

Even in the qualified immunity context, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Rather, summary judgment continues to be "appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 656–57 (quoting Fed. R. Civ. P. 56(a)). Accordingly, when determining whether officers are entitled to qualified immunity at the summary judgment stage, "a court must view the evidence in the light most favorable to the opposing party." *Id.* at 657 (quotation omitted).

### III

The Court begins with Hickman's Fourth Amendment illegal search and seizure claim against Compton in Count III of the Complaint.[1] This claim is based on Hickman's contention that Compton searched Hickman's rectal cavity (by inserting a finger into Hickman's rectum) without a warrant. Defendants argue that Compton is entitled to summary judgment on this claim on the basis of qualified

---

[1] As explained above, Hickman's counsel clarified at the hearing on Defendants' motion that this claim is brought only against Compton.

immunity.  The Court concludes that Compton is not entitled to summary judgment on his qualified immunity defense to this claim.

During the hearing before the Court, Defendants' counsel acknowledged that at the time of Hickman's interaction with Compton, it was clearly established that absent exigent circumstances, an officer could not conduct a warrantless search of a suspect's rectal cavity.  Counsel contended, however, that Compton is entitled to qualified immunity on Hickman's illegal search claim because the evidence conclusively establishes that Compton did not insert his finger (or anything else) into Hickman's rectum.   The Court disagrees.

Hickman testified unequivocally that Compton inserted his finger into his (Hickman's) rectum. (*See* Hickman Dep. at 72, 144-147, ECF No. 44-3, PageID.547, 565-566.)  That testimony, standing alone, is enough to create a material factual dispute that defeats Compton's qualified immunity defense.

Defendants counter that the video and audio recordings belie Hickman's contention that Compton inserted a finger into Hickman's rectum.  But as noted above, a substantial portion of the interaction between Hickman, Compton, and the other Officer Defendants in the holding cell (during which the rectal search allegedly occurred) was not captured on the video recording.  Thus, that recording does not conclusively refute Hickman's testimony that Compton inserted a finger into his

rectum. And while much of the encounter was captured on the audio recording, that recording does not clearly indicate whether the rectal search occurred or not.

Finally, Defendants argue that Hickman's conduct was inconsistent with his claim that he had been subjected to a rectal search. Defendants note that Hickman offered to submit to a continued strip search after the alleged rectal search, and Defendants say that Hickman surely would not have made that offer if he had actually had to endure a rectal search. (*See* Defs.' Mot, ECF No. 44, PageID.505.) However, while there may arguably be some tension between Hickman's offer to submit to a continued strip search and his claim that he had been subjected to a rectal search, the offer is not so fundamentally inconsistent with the claimed rectal search that a reasonable jury would have to conclude that the rectal search never occurred. Moreover, Hickman offered a plausible explanation as to why he offered to submit to the continued strip search: because he believed that submitting to the search was the only way to end his encounter with the Officer Defendants and secure free passage from the police station. (*See* Hickman Dep. at 77-78, ECF No.44-3, PageID.549.)

Under all of these circumstances, a jury could reasonably credit Hickman's testimony that Compton inserted a finger into his rectum in order to search it. Accordingly, Compton is not entitled to summary judgment on Hickman's Fourth Amendment illegal search claim.

**IV**

The Court next turns to Hickman's claim in Count I of the Complaint that the Officer Defendants used excessive force against him when they attempted to conduct the strip search in the holding cell. The Defendants argue that the Officer Defendants are entitled to summary judgment on this claim for two reasons: first, because any force the Officer Defendants used was reasonably applied in response to Hickman's resistance, and, second, because Hickman cannot identify which officers applied the force. The Court concludes that the Officer Defendants are not entitled to summary judgment on either basis.[2]

**A**

The Officer Defendants are not entitled to summary judgment on Hickman's excessive force claim on the basis that the amount of force they used was reasonable as a matter of law. Hickman's excessive force claim is governed by the Fourth

---

[2] The Defendants do not develop the argument that they are entitled to qualified immunity for their alleged uses of force. The qualified immunity argument in Defendants' brief appears to focus almost exclusively on whether the Officer Defendants have qualified immunity for conducting the search. (*See* Mot., ECF No. 44, PageID.517-519.) In any event, the Court notes that at the time of the events giving rise to Hickman's claims, it was clearly established that police officers could not use injury-causing force against a suspect who is handcuffed and cooperating with them. *See, e.g., Burgess*, 735 F.3d 462, 474 (6th Cir. 2013).

Amendment, which "extends 'at least through the completion of the booking procedure.'" *Burgess v. Fischer*, 735 F.3d 462, 474 (6th Cir. 2013) (quoting *Aldini v. Johnson*, 609 F.3d 858, 865-66 (6th Cir. 2010)).  In assessing whether the Officer Defendants violated the Fourth Amendment by using an unreasonable amount of force, this Court must consider: "the severity of [Hickman's] crime, whether he posed an immediate threat to the safety of [the officers], and whether he was actively resisting arrest or attempting to [defeat the officers' effort to conduct the strip search]." *Id.*  Another important factor for the Court to consider is whether Hickman was handcuffed when the Officer Defendants allegedly used force against him. Indeed, Sixth Circuit "case law overwhelmingly compels a finding" that the use of force causing injury against a handcuffed and non-resisting suspect is unreasonable. *Id*.

The Court cannot conclude as a matter of law that the amount of force used by the Officer Defendants was reasonable because there is a conflict between the testimony of Hickman and the testimony of the Officer Defendants concerning the amount of force applied and the circumstances under which that force was applied. Hickman testified that even though he was handcuffed and frequently tried to cooperate with the Officer Defendant during the strip search, the Officer Defendants nonetheless (1) placed a knee on his neck and on his arms with such force that his arms suffered bruising, (2) repeatedly pushed his arms upward (while his hands were

14

cuffed together) with such force as to cause pain, and (3) forced him face-first on to a bench in a manner that caused his exposed testicles to contact the bench. (*See, e.g.*, Hickman Dep. at 61, 65, 126-128, 130, 133, ECF No. 44-3, PageID.545-546, 561-563.)  The Officer Defendants counter that Hickman was not handcuffed and was generally resisting, and they say that they did not use any force beyond merely holding Hickman's arms. (*See, e.g.,* Compton Dep. at 34-36, 43, ECF No. 44-8, PageID.616, Gomez Dep. at 21-22, 24, ECF No. 44-11, PageID.651, Monson Dep. at 21, ECF No. 44-12, PageID.663, Strohauer Dep. at 22, ECF No. 44-4, PageID.576.)  Given the differences between Hickman's account of the force and the circumstances, on one hand, and the Officer Defendants' description of those matters, on the other hand, the Officer Defendants are not entitled to summary judgment based upon their argument that any and all force that they applied was reasonable as a matter of law. *See Burgess*, 735 F.3d at 474-75 (holding that officers were not entitled to summary judgment on claim that they unreasonably used excessive force against a suspect in the booking process where there was conflict between suspect's testimony and officers' testimony).

The Officer Defendants counter that a reasonable jury could not believe Hickman's version of events because it conflicts with the video and audio recordings of the strip search.  For instance, they assert that the video recording belies Hickman's testimony that he was handcuffed during the strip search because it

shows him leaving the holding cell without cuffs on his hands.  And they argue that the images on the video and the sounds on the audio conclusively demonstrate that Hickman was resisting the search.

These are serious arguments, but the Court cannot conclude that the video and audio evidence so undercuts Hickman's testimony as to render it entirely unbelievable as a matter of law.  While the video recording does depict Hickman leaving the holding cell without cuffs on his hands, the fact that he exited the cell without wearing cuffs does not compel the conclusion that he was uncuffed *during the search*.[3]  Moreover, while the audio recording does reflect a number of loud complaints by Hickman – especially at the beginning of the attempted strip search – the audio does not conclusively refute Hickman's testimony that force was used against him during the search at times that he was cooperating rather than resisting. And the Officer Defendants, themselves, acknowledged that there were, indeed, at least some points during the encounter when Hickman did follow their commands and did position his body as they requested. (*See, e.g.*, Monson Dep. at 20, ECF No. 44-12, PageID.662, Strohauer Dep. at 26, ECF No. 44-4, PageID.577, Gomez Dep. at 28-29, ECF No. 44-11, PageID.652-653, Monson Dep. at 19, ECF No. 44-12, PageID.662.)   Under these circumstances, the Court cannot conclude that the

---

[3] Moreover, at least one of the Officer Defendants agreed with Hickman that he (Hickman) was handcuffed during (at least much) of the attempted search. (*See* Gomez Dep. at 21, ECF No. 44-11, PageID.651.)

recordings entitle the Officer Defendants to summary judgment on Hickman's excessive force claim. While the jury may well ultimately conclude that the recordings are powerful evidence that supports the Officer Defendants' version of events, the recordings do not entitle the Officer Defendants to judgment as a matter of law.

The Officer Defendants also direct the Court to Hickman's own testimony in which he admitted that he did not comply with at least some of the Officer Defendants' commands. The Officer Defendants insist that these admissions by Hickman establish that the use of force against him was reasonable as a matter of law. This is another serious argument, but the Court concludes that Hickman's testimony is not fatal to his Fourth Amendment excessive force claim. As noted above, the strip search lasted for a full 13-minutes. Even if Hickman failed to comply with some commands during that period, that would not entitle the Officer Defendants to use force against him during the *other* portions of the encounter during which, according to both Hickman and the Officer Defendants, he was cooperating rather than resisting. Simply put, a jury could reasonably find based upon Hickman's testimony that while he may have opposed some commands during the approximately 13-minute strip search, the Officer Defendants used force against him when he was cooperating (and handcuffed). Accordingly, the Officer Defendants

are not entitled to summary judgment on the ground that Hickman's own testimony establishes that their entire use of force was reasonable as a matter of law.

## B

The Officer Defendants also are not entitled to summary judgment on Hickman's Fourth Amendment excessive force claim on the ground that he has failed to specifically identify which officer applied the allegedly-unlawful force. First, Hickman *has* presented some evidence concerning which particular Officer Defendant unreasonably applied at least some of the force against him. For instance, he testified that Compton and Novakowski kept pushing his arms up in an effort to forcibly bend him over, causing him pain, while he was handcuffed and not resisting. (*See* Hickman Dep. at 61, ECF No. 44-3, PageID.545.) Thus, the Defendants are mistaken when they argue that Hickman did not specifically connect the use of force to any of the Officer Defendants.

Second, Hickman's failure to specifically identify the particular Officer Defendants who placed their knees on his back and neck is not fatal to the portion of his Fourth Amendment excessive force claim based upon those uses of force. The general rule is that "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Pineda v. Hamilton Cty.*, *Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (quoting *Jutrowski v.*

18

*Township of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018)), but there is an exception to that rule.  Under that exception, a "plaintiff[] may proceed to trial if [he first] place[s] each 'individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence." *Id.* at 492 (quoting *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019)).  If a plaintiff makes that initial showing, he may proceed to trial against all of the officers in the small group so long as he also presents evidence that (1) "each defendant engaged in [some] unconstitutional act" by, for instance, failing to intervene when the other defendants used excessive force, and (2) "circumstances beyond [the plaintiff's] control" prevented him from identifying "which specific officer engaged in which specific constitutional violation." *Id.* at 493 (quoting *Fazica,* 926 F.3d at 292 and *Batson v. Hoover*, 788 F. App'x 1017, 1020 (6th Cir. 2019)).

The evidence presented by Hickman satisfies the exception to the general rule requiring a plaintiff to identify which officer applied which specific force.  His testimony (construed in his favor) places all of the Officer Defendants in a small group that violated his constitutional rights.  And as described in more detail below, that testimony is likewise sufficient to establish that each of the Officer Defendants failed to intervene to prevent the use of excessive force against Hickman.  Finally, his testimony describes the circumstances beyond his control that prevented him from connecting each particular Officer Defendant to some of the force.  He

explained that the Officer Defendants stood behind him and out of his line of sight while they put their knees on his neck and arm and forced him onto the bench. (*See* Hickman Dep. at 60-66, ECF No. 44-3, PageID.544-546.)   For these reasons, Hickman may proceed with his excessive force claim against all of the Officer Defendants even though he cannot "pinpoint *which* specific officer committed [every] specific unconstitutional act." *Pineda,* 977 F.3d at 493 (6th Cir. 2020) (emphasis in original).[4]

## V

The Court next addresses Hickman's claim in Count II of the Complaint that the Officer Defendants each failed to intervene to prevent and/or protect him from the use of excessive force.  In order to prevail on that claim, Hickman must prove that "(1) the [Officer Defendants] observed or had reason to know that excessive force would be or was being used, and (2) the [Officer Defendants] had both the opportunity and the means to prevent the harm from occurring." *Id.* (quoting *Fazica*, 926 F.3d at 289.)  Hickman has presented sufficient evidence to satisfy both prongs of this test.  The Officer Defendants are therefore not entitled to summary judgment on this claim.

---

[4] The Court does not consider the alleged penetration of Hickman's rectum as part of his Fourth Amendment excessive force claim as pleaded in Count I of the Complaint.  Instead, the Court believes that those allegations are more properly treated as part of Hickman's Fourth Amendment unreasonable search and seizure claim as pleaded in Count III of the Complaint.

First, a jury could reasonably infer from Hickman's testimony that all of the Officer Defendants observed that excessive force was being used against him. As described above, Hickman's testimony is sufficient to support findings that (1) for some meaningful portion of his approximately 13-minute encounter with the Officer Defendants in the holding cell, he was cooperating with their efforts to conduct a strip search and (2) despite his cooperation (and even though he was handcuffed) the Officer Defendants repeatedly applied force against him in a manner that caused pain and injury. All of this occurred as the Officer Defendants surrounded (or touched) and/or observed Hickman for many minutes in the holding cell. A jury could reasonably conclude that under these circumstances, all of the Officer Defendants were aware that (at least at some points during the encounter) excessive force was being applied to Hickman.

Second, a jury could reasonably find that the Officer Defendants could have prevented at least some of the excessive force applied to Hickman. While each Officer Defendant may not have had the opportunity to prevent the first allegedly-unreasonable use of force against Hickman and/or to prevent every allegedly-unreasonable use of force against Hickman, a jury could find that at some point during the approximately 13-minute encounter, each Officer Defendant could have objected and intervened to stop at least some of the force being applied when Hickman was cooperating and/or not resisting. On this record, it is for the jury (if it

21

believes Hickman's testimony) to sort out which specific applications of force each Officer Defendant could have prevented.[5]   For all of these reasons, the Officer Defendants are not entitled to summary judgment on Hickman's failure-to-intervene claim.

# VI

The Court next turns to Hickman's supervisory liability claim in Count VII of the Complaint against Novakowski.  In order to prevail on that claim, Hickman must establish that Novakowski "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, [Hickman] must show that [Novakowski] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).  The Court concludes that Novakowski is not entitled to summary judgment on this claim.

Hickman has presented sufficient evidence to support the required findings on this claim.  As described above, he testified that Novakowski was present in the holding cell during the strip search while force was being applied as he (Hickman)

---

[5] While Hickman has presented sufficient evidence to hold all of the Officer Defendants liable for failing to intervene to prevent the use of excessive force, he has not presented sufficient evidence to hold the Officer Defendants liable for failing to intervene to prevent the alleged rectal search.  Hickman has not presented any evidence that the Officer Defendants knew, or had reason to know, that Compton would be conducting such a search.

was handcuffed and cooperating.   Hickman also testified that Novakowski participated in the effort to conduct the strip search.   Hickman's testimony is sufficient to support a finding that Novakowski either "directly participated in" or "knowingly acquiesced in" the use of excessive force against him.[6]

### VII

The Court now addresses Hickman's municipal liability claim in Count VIII of the Complaint against the City.   In this claim, he seeks to hold the City liable for the constitutional violations allegedly committed by the Officer Defendants.   The City is entitled to summary judgment on the claim.

The standard for municipal liability under Section 1983 is well-settled:

> To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*
>
> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or

---

[6] Hickman has not presented sufficient evidence to hold Novakowski liable for the rectal search on a supervisory liability theory.  There is no evidence that Novakowski knew Compton was going to conduct such a search or that such a search was being conducted.  There is, in short, no evidence that Novakowski knowingly participated in or approved in any way the conducting of the rectal search.

> supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Id.; Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997); *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir.1996).

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429–30 (6th Cir. 2005).

Here, Hickman proceeds under the fourth "avenue." He seeks to hold the City liable based upon its alleged custom of tolerating or acquiescing in federal rights violations. (*See* Resp., ECF No. 49, PageID.737-739.) As Hickman acknowledges, in order to prevail on this claim, he "must show: (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. (*Id.*, quoting *Thomas*, 398 F.3d at 429.)

Hickman has not presented any evidence on the first two elements of this claim. He has not presented any proof that the City's police officers engaged a clear pattern or practice of conducting unlawful rectal searches or of using excessive force. Nor has he presented any evidence that the City had actual or constructive notice of any such pattern or practice. Instead, he has presented evidence that the City's officers conducted many strip searches over the years. (*See id.*, PageID.738-

24

739.)  But that evidence cannot sustain his municipal liability claim because, as he clarified at the motion hearing, he is no longer claiming that the strip search violated his constitutional rights.  He is challenging only the rectal search.  Thus, prior strip searches are not relevant to Hickman's municipal liability claim.  Moreover, Hickman has not presented any evidence that the prior strip searches were unlawful.  Indeed, the fact that the City's officers participated in strip searches does not establish a pattern or practice of illegal activity.  For all of these reasons, Hickman's municipal liability claim fails as a matter of law.

### VIII

Finally, the Court addresses Hickman's state-law claims in Counts V and VI of the Complaint for assault and battery and the intentional infliction of emotional distress.  The City is entitled to summary judgment on these claims; the Officer Defendants are not.

Defendants argue that the City has governmental immunity from Hickman's state-law claims under the Michigan Governmental Tort Liability Act (the "GTLA"), MCL § 691.1407, because the claims arise out of the City's performance of a "governmental function," i.e., "the operation of a police department." (Mot., ECF No. 44, PageID. 522-523.)  In support, the Defendants cite a published decision of the Michigan Court of Appeals holding that Michigan municipalities have immunity for tort liability arising out of their operation of a police department. (*See*

*id.*, citing, *Hill v. City of Saginaw*, 399 N.W.2d 398 (Mich. Ct. App. 1986).) Hickman has not responded to Defendants' immunity argument. Since the argument is unopposed, and because it has support in the case cited by the Defendants, the Court will grant summary judgment in favor of the City on Hickman's state-law tort claims on the basis of governmental immunity.

In contrast, the Defendants have failed to show that the Officer Defendants are entitled to immunity from Hickman's state-law claims. In support of Defendants' immunity argument, they simply state the governing legal standard and assert that the Officer Defendants "acted in a good faith belief that Hickman had secreted drugs that could harm him and are entitled to immunity…." (Mot., ECF No. 44, PageID.523.) But for all of the reasons explained above, Hickman has presented sufficient evidence to support a finding that (1) Compton knowingly conducted a warrantless rectal cavity search in violation of clearly established law and (2) all of the Officer Defendants either applied, or failed to prevent the use of, excessive force. In light of that evidence, the Court cannot conclude as a matter of law that the Officer Defendants acted in good faith and are entitled to immunity on that basis.

The Defendants further contend that Hickman's state-law claims against the Officer Defendants "fail due to their lack of merit" (*id.*), but Defendants have failed to identify a fatal flaw in the claims. The Defendants argue that Hickman's assault and battery claim fails against the Officer Defendants because Hickman "cannot

demonstrate an intention to harm." (*Id.*)   But, for all of the reasons explained above, a jury could reasonably find that the Officer Defendants intended to harm Hickman by, among other things, (1) pushing his harms up (while his hands were cuffed) at a time he was not resisting and in a manner that caused him pain and (2) placing their knees on his neck and back.

Finally, the Defendants argue – in a single sentence – that Hickman's intentional infliction of emotional distress claim fails against the Officer Defendants because Hickman "was not traumatized and sought no treatment for the alleged injuries." (*Id.*, PageID.523-524.)  But the Defendants do not cite any cases in which courts have rejected factually-similar claims on similar grounds.   And it would appear that having one's rectum forcefully searched and being accosted by a group of police officers, as Hickman claims he was, is sufficient to support a claim for the intentional infliction of emotional distress.   In any event, the Defendants have not yet persuaded the Court that the evidence presented by Hickman is insufficient to establish an intentional infliction of emotional distress.[7]

## IX

For the reasons explained above, Defendants' Motion for Summary Judgment (ECF No. 44) is **GRANTED IN PART AND DENIED IN PART** as follows:

---

[7] The Defendants may renew their attacks on the merits of Hickman's state-law tort claims at the appropriate point during the trial and should support any renewed attack with a fuller legal analysis of the claims.

- The motion is **GRANTED** with respect to Hickman's conspiracy claim in Count IV of the Complaint, his Fourth Amendment illegal seizure claim in Count III of the Complaint to the extent that claim is brought against Defendants *other than* Compton, and all of the claims against the City.

- The motion is **DENIED** with respect to all other claims.

- The following claims remain for trial: (1) the claim that Compton violated Hickman's Fourth Amendment rights by conducting a warrantless rectal search; (2) the claim that the Officer Defendants used excessive force and/or failed to intervene to prevent the use of excessive force during the strip search in the holding cell; (3) the supervisory liability claim against Novakowski; and (4) the state tort claims against the Officer Defendants.

As the next step in this action, the Court will hold an in-person settlement conference with the parties and counsel when conditions permit.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  March 31, 2021            UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764